UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SAN DIEGO SHEET METAL WORKS, a California corporation, | |
| Plaintiff, | No. C05-2Z |
| v. | ORDER |
| ENVIRONMENTAL INTERIORS, INC., AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA; THE CLARK CONSTRUCTION GROUP, INC., now known as CLARK CONSTRUCTION GROUP, LLC; and PORT OF SEATTLE, | |
| Defendants. | |

This case comes before the Court on Defendant Environmental Interiors, Inc.'s motion for partial summary judgment, docket no. 14, and Plaintiff San Diego Sheet Metal Works' motion for leave to file a second amended complaint, docket no. 31. The Court, having considered the briefs both in support of and opposition to the motions, GRANTS IN PART and DENIES IN PART the defendant's motion for partial summary judgment, docket no. 14, and DENIES the plaintiff's motion for leave to amend, docket no. 31.

## BACKGROUND

This case concerns materials supplied for a project run by the Port of Seattle (the "Port") commonly known as the South Terminal Expansion Project, Seattle Tacoma

ORDER   1–

International Airport (the "Project"). Defendant Environmental Interiors, Inc. ("EII" or "Defendant") entered into a sub-contract with prime contractor The Clark Construction Group, Inc., now known as Clark Construction Group, LLC ("Clark"). Cormier Decl., docket no. 16, ¶ 2. Under this sub-contract EII was to furnish and install certain interior finish systems, including ornamental metals and paneling. Id. EII in turn entered into a sub-contract with Plaintiff San Diego Sheet Metal Works ("San Diego") to engineer, fabricate, furnish and supply interior sheet metal materials.[1] LePiane Decl., docket no. 22, ¶¶ 2, 3. The contract between San Diego and EII called for the delivery of materials, but did not contain any provision for San Diego to provide labor. Id., Ex. A. San Diego did not perform any substantial labor at the project site, but did conduct occasional inspections of the installation of materials it supplied at the request of EII. Stuck Decl., docket no. 17, ¶ 5; LePiane Decl., ¶ 9.

During installation of interior metal finishes supplied by San Diego for the Project, EII directed San Diego to provide duplicate sheet metal panels, to fabricate additional panels of custom dimensions not originally specified, and to perform its work on an expedited basis. LePiane Decl., ¶ 7. During the course of San Diego's performance, EII requested that San Diego make site visits and inspect the product and installation. Id. ¶ 9. EII asserted that San Diego would receive additional compensation for its resulting additional costs. Id. ¶ 8.

When San Diego completed performance of its work under the subcontract, it asserts that a large balance was owed by EII. Id. ¶ 11. When EII failed to make timely payment of the balance due, San Diego submitted a Notice of Lien Claim, dated July 27, 2004, in the amount of $854,492.72 to the Port. Id. ¶ 12; Cormier Decl., ¶ 4, Ex. 2. This claim states that San Diego had been paid a total of $908,313 as of July 27, 2004. Cormier Decl., Ex. 2.

---

[1] There is a dispute of fact as to whether San Diego was a sub-contractor or a materials supplier. This dispute is immaterial to the outcome of this motion. The Court defers to the non-moving party, the Plaintiff, throughout this Order and refers to the contractual relationship between Plaintiff and EII as a sub-contract.

ORDER   2–

1   EII received a copy of this claim from the Port and disputes the "paid to date" amount it
2   states.  Cormier Decl., ¶ 4.  EII submits documentation that it had paid San Diego
3   $947,189.50.  Id., ¶4, Ex. 4.  San Diego does not dispute that EII had paid it $947,189.50,
4   not $908,313, as of July 27, 2004.  In addition, EII submits documentation that between July
5   27, 2004 and the initiation of this lawsuit, EII made two payments to San Diego totaling
6   $202,810.50.  Id., ¶ 6, Ex. 4.  Plaintiff acknowledges that these payments were made, but
7   states that EII has not satisfied the total balance due.  LePiane Decl., ¶ 14.  Plaintiff claims
8   that since it filed its initial claim on July 27, 2004, it has become aware of additional costs
9   incurred on the Project which are recoverable against EII.  Id., ¶ 29.  These costs include the
10  expense of providing duplicate materials to the Project at EII's request, acceleration and
11  compression costs, and excessive engineering.  Id.  Karl LePiane, president of San Diego,
12  avers that San Diego was aware of additional costs in excess of $854,492.72 at the time it
13  filed its complaint.  Id., ¶ 31.
14       The Port, pursuant to Wash. Rev. Code § 60.28.011, et seq., has retained five percent
15  of the contract amount from payment to Clark.  This money is required to be used in part as a
16  trust fund for the protection and payment of the claims of any person arising under the
17  contract.  Wash Rev. Code § 60.28.011(1).  San Diego asserts claims for monies alleged due
18  from EII for breach of contract and to foreclose on San Diego's purported lien against the
19  statutory retained percentage held by the Port.  Amended Complaint, docket no. 1.
20  Foreclosure of this lien on the retained percentage is the only claim asserted against Clark
21  and the Port.  Id.
22       San Diego did not provide pre-claim notice to Clark pursuant to Wash. Rev. Code
23  § 60.28.015 that it might claim a lien against the statutory retained percentage.  Stuck Decl.,
24  ¶ 7.  Such a notice is not a claim itself, but is an initial notice to the prime contractor that the
25  third party is providing materials to a direct subcontractor on the project and might claim a
26  lien against the retained percentage if not paid.  Wash. Rev. Code § 60.28.015.  San Diego

ORDER   3–

also did not provide a pre-claim notice pursuant to Wash Rev. Code § 39.08.065 against Clark's payment bond.  Defendant EII now moves for partial summary judgment: (1) dismissing with prejudice Plaintiff's claims against the Port, Clark, and the retained percentage for the Project; and (2) dismissing with prejudice Plaintiff's claims against EII to the extent of total payments in the amount of $241,687 made by EII and not accounted for by Plaintiff.  Docket no. 14.  Plaintiff moves the Court for leave to file a second amended complaint to assert a claim, pursuant to Wash. Rev. Code § 39.08.010, against Clark's payment bond.  Docket no. 31.

# DISCUSSION
## I. Motion for Summary Judgment
### 1. Standard

Summary judgment is appropriate when the movant demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  Once the moving party meets its initial responsibility, the burden shifts to the non-moving party to establish that a genuine issue as to any material fact exists.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The non-moving party must present significant probative evidence tending to support its claim or defense.  Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  Evidence submitted by a party opposing summary judgment is presumed valid, and all reasonable inferences that

ORDER  4–

may be drawn from that evidence must be drawn in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### 2. Failure to File Pre-Claim Notice on Retained Percentage

Defendant argues that the Plaintiff's failure to file a pre-claim notice of a potential lien against the statutory retained percentage bars its claim against the retained percentage, and thus against Clark and the Port. The Plaintiff argues that it was not required to provide pre-claim notice for its damages for labor costs incurred in preparing the materials for delivery and that any payment it has received from EII should not be applied against these labor costs.

Wash. Rev. Code § 60.28.015, Recovery from retained percentage--Written notice to contractor of materials furnished, states that:

> Every person, firm, or corporation *furnishing materials, supplies, or equipment* to be used in the construction, performance, carrying on, prosecution, or doing of any work for the state, or any county, city, town, district, municipality, or other public body, *shall give to the contractor of the work a notice in writing, which notice shall cover the material, supplies, or equipment furnished or leased during the sixty days preceding the giving of such notice* as well as all subsequent materials, supplies, or equipment furnished or leased, stating in substance and effect that such person, firm, or corporation is and/or has furnished materials and supplies, or equipment for use thereon, with the name of the subcontractor ordering the same, and that a lien against the retained percentage may be claimed for all materials and supplies, or equipment furnished by such person, firm, or corporation for use thereon . . . and no suit or action shall be maintained in any court against the retained percentage to recover for such material, supplies, or equipment or any part thereof unless the provisions of this section have been complied with.

Wash. Rev. Code § 60.28.015 (emphasis added). During the pendency of this motion, the Washington Supreme Court decided LRS Electric Controls, Inc. v. Hamre Construction, Inc., 153 Wash. 2d 731 (March 3, 2005), interpreting this statute. Just after the Washington Supreme Court's decision, EII moved the Court for leave to file additional briefing on the decision, docket no. 34. The Court granted this motion, docket no. 42, and both parties filed supplemental briefs.

ORDER  5–

LRS Electric involved contracts to improve Newport Community Hospital for Washington's Public Hospital District No. 1. 153 Wash. 2d at 734. Hamre Construction, Inc. ("Hamre") was the primary contractor on this project. Id. C & R Plumbing and Heating, Inc. ("C & R") was a subcontractor hired by Hamre to complete mechanical systems on the project. Id. Finally, Tyko Mechanical, LLC, ("Tyko") was sub-subcontracted by C & R to provide "all supervision, materials, labor, supplies and equipment" for the project's heating, ventilation and air-conditioning ("HVAC") system. Id. at 734-35. Thus, under this contract, Tyko was to provide both materials and onsite labor for the project for $16,500. Tyko's final invoice stated that of the $16,500 contract price, materials represented $9,017 and labor represented $7,483. Id. at 735. C & R was unable to make the payments due Tyko. Hamre, upon learning this, made its final payment to C & R, of $7,000, jointly payable to C & R and Tyko. Id. at 723. Ultimately, Tyko received this payment, but was still owed $9,500 of the original $16,500 contract price. Id. Tyko filed a notice of claim against Hamre's contractor's bond and the statutory retained percentage to attempt to establish liens. Id. Tyko then attempted to foreclose on these attempted liens by filing a complaint in Pend Oreille Superior Court. Id. Hamre initially paid Tyko an additional $2,628.22, then moved for summary judgment on the grounds that Tyko had not filed pre-claim notices for its claims against either Hamre's contractor's bond or the retained percentage. Id. at 735-36. It was undisputed that Tyko had not filed any pre-claim notice. Id. Tyko argued that because it both supplied the HVAC materials and actually installed them onsite, it provided both labor and materials to the project and therefore the pre-claim notice requirement, which applied to any individuals "furnishing materials, supplies, or equipment" to a project, did not apply to them.

The Washington Supreme Court held that the pre-claim notice requirement applied to Tyko's materials claim against the retained percentage even though it had supplied both materials and labor to the project. Id. at 738-43. The court reasoned that the plain and

ORDER   6–

unambiguous language of the statute applied to "every person, firm, or corporation furnishing materials, supplies or equipment . . ." and that this included Tyko as it had furnished materials and supplies. Id. at 742-43 (quoting Wash. Rev. Code § 60.28.015). Therefore, the court held, Tyko's materials claim against the retained percentage was barred by its failure to provide timely pre-claim notice. Id. at 743. The Court went on to hold that payments already made by Hamre to Tyko could only be applied to the labor portion of the claim, as that was the only valid claim Tyko had against Hamre. Because Tyko had received $9,682.22 from Hamre, and its labor claim was only $7,483, the Court found that Tyko's claim against the contractor's bond and retained percentage had been fully satisfied. Id. at 743-44.

San Diego attempts to withstand the effects of LRS Electric on its claim against the retained percentage on two grounds.[2] First, San Diego notes that in LRS Electric, Tyko's labor claims were allowed despite the lack of pre-claim notice. However, in this case the only onsite labor that San Diego provided consisted of visits to the site to inspect the installation of its product. LePiane Decl., ¶ 9. Despite the lack of onsite labor provided by San Diego, San Diego argues that EII's demands regarding the specifications for the materials San Diego supplied required it to incur *internal* labor costs. Plaintiff's Supp. Brief, docket no. 45, p. 2. San Diego argues that damages related to these internal costs should not be barred by its failure to file a pre-claim notice. Id.

The alleged labor claims in this case are distinguishable from the labor claims in LRS Electric. In this case, San Diego's contract does not have a labor component on which a substantial labor claim can be based. See LePiane Decl., docket no. 22, Ex. A. The contract

---

[2]San Diego also argues that whether it was a sub-contractor or solely a materials supplier is a genuine issue of material fact that precludes granting partial summary judgment. However, in LRS Electric, the Washington Supreme Court made clear that the pre-claim filing requirements of Wash. Rev. Code § 60.28.015 apply to both suppliers and second-tier subcontractors such as Tyko and San Diego. 153 Wash. 2d at 738-43.

ORDER   7–

contemplated that internal labor would have to be incurred in order to "engineer, fabricate, furnish and deliver" the materials at issue. Id. However, payment of the contract price is "for the product that is delivered and accepted," not for labor. Any labor costs incurred by San Diego as a result of EII's requests that it modify the materials it supplied are part and parcel of San Diego's obligations under the contract to provide materials. In contrast, in LRS Electric, the contract at issue specifically called for the provision of "supervision, materials, labor, supplies, and equipment" for the sum of $16,500. 153 Wash. 2d at 734-35. Labor incurred internally by San Diego in order to provide EII materials does not give rise to a separate labor claim, analogous to the labor claim in LRS Electric, because unlike LRS Electric, the contract here did not contemplate the provision of labor. This contract may have been modified when EII asked San Diego to visit the project site and perform onsite labor by inspecting the installation of materials it had provided. However, these onsite inspections are the only source of a valid labor claim by San Diego.

Second, San Diego argues that the payments it has received thus far from EII should not be apportioned to satisfy the labor elements of San Diego's claim against the retained percentage. San Diego argues that in LRS Electric, Tyko's payments came directly from the primary contractor, Hamre. Plaintiff's Supp. Brief, docket no. 45, pp. 2-3. In this case, San Diego notes, it has not received payment from the general contractor Clark, distinguishing this case from LRS Electric. However, there is nothing in the text of LRS Electric to indicate that the source of the payment received by Tyko played a role in the court's decision to apply the payments received by Tyko to its labor claim against Hamre. See LRS Electric, 153 Wash. 2d at 743-44. The only material element in this decision was the fact that Tyko's materials claim against Hamre was barred. Id. Because this claim was barred, the court found that there was no valid debtor-creditor relationship between Tyko and Hamre with regard to its materials claims. Therefore, Tyko could have applied payments received only to the valid labor claim. Id.

ORDER 8–

Applying LRS Electric to the facts of this case, San Diego's materials claim against the retained percentage held by the Port is barred. The undisputed facts show that San Diego was a sub-subcontractor that primarily provided materials to EII for the Project. The only onsite labor provided by San Diego was in the form of inspections of the installation of its products. On a motion for summary judgment, San Diego must come forward with specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56 (e). Plaintiff San Diego has not come forward with any specific facts that show that it filed the required pre-claim notice. Additionally, San Diego has not come forward with specific facts that show it has a claim for labor directly provided to EII other than for onsite inspections. Therefore, its materials claim against the retained percentage held by the Port is barred.

Further, it is undisputed that EII has paid San Diego $1,150,000.[3] Defendant argues that this amount is far in excess of any labor claim by San Diego based on its inspections of the site. Plaintiff does not dispute that it has received payments which exceed the value of its potential labor claims based on its site inspection. Instead, San Diego argues that the Court should consider its as of yet unspecified internal labor costs and that because EII, not Clark, paid San Diego, these payments should not be applied to San Diego's labor claim against Clark. Plaintiff's Supp. Brief, p. 2-3. For the reasons stated above, these arguments fail. The Court finds, based on San Diego's failure to dispute it, that the amount San Diego has received thus far exceeds the amount of its valid labor claim and that San Diego's claim against the retained percentage has been fully satisfied. The Court GRANTS EII's motion for partial summary judgment, docket no. 14, as to San Diego's claims against Clark and the

---

[3]The Plaintiff's notice of claim dated July 27, 2004 acknowledges payment in the amount of $908,313. The declaration of Paul Cormier, states that an additional $38,875.50 was paid to San Diego prior to July 27, 2004 and that between July 27, 2004 and the initiation of this lawsuit, EII made payments totaling $202,810.50 to San Diego. See Cormier Decl., ¶¶ 4, 6, Ex. 4. San Diego does not dispute that EII made these payments.

ORDER  9–

Port for foreclosure of San Diego's alleged lien against the retained percentage and dismisses the Plaintiff's claim against Clark, the Port and the retained percentage with prejudice.

### 3. Reduction in Damages Claim

The Court finds that there are material issues of fact which preclude summary judgment on the Plaintiff's damages claims at this time. The Court DENIES EII's motion for partial summary judgment, docket no. 14, as to San Diego's claims for damages.

### 4. Attorneys' Fees

The Court DENIES EII's request for attorneys' fees.

## II. Motion to Amend

San Diego seeks leave to file a second amended complaint to add a claim, pursuant to Wash. Rev. Code § 39.08.010, against the payment bond of Clark as principal, and a variety of insurance companies as sureties. Docket no. 31. The Plaintiff argues that under Fed. R. Civ. P. 15(a)'s liberal amendment policy, leave to amend should be granted unless the amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay.

Defendants EII, American Casualty Company, Clark and the Port (collectively "Defendants") oppose San Diego's motion to amend on the grounds that it is futile under LRS Electric. In LRS Electric, also discussed above, the Washington Supreme Court analyzed the pre-claim notice requirements for claims against the contractor's bond as well as the pre-claim notice requirements against the retained percentage. 153 Wash. 2d at 738-42. Under Washington law, every supplier of materials must submit a written pre-claim notice to the prime contractor within ten (10) days of the date of the first delivery of supplies notifying the prime contractor that its bond will be held for payment of the supplies or no

ORDER 10–

suit or action shall be maintained in any court against the contractor or its bond to recover for the materials. Wash. Rev. Code § 39.08.065. The LRS Electric court analyzed sub-subcontractor Tyko's claim against prime contractor Hamre's bond exactly as it analyzed Tyko's claim against the retained percentage, except for the different timing requirements for the two pre-claim notices.[4] 153 Wash. 2d at 742-43. The LRS Electric court held that the pre-claim notice requirements for materials claims against contractor's bonds applied to sub-subcontractors such as San Diego. Id. at 741-42. The LRS Electric court also held that the notice does not apply to labor claims, only materials claims. San Diego renews its argument that the labor costs it had to incur to meet EII's demands regarding the materials it supplied should constitute a separate labor claim. These arguments fail here as they fail in San Diego's claim against the retained percentage. San Diego did not supply any appreciable amount of labor to the construction of this project, nor did the contract with EII call for the provision of labor. Instead, the contract called for San Diego to supply materials, which it did. Therefore, San Diego's proposed claim against the contractor's bond is primarily a materials claim, not a labor claim. The Court found above that the small portion of San Diego's claim which is attributable to onsite labor has been fully satisfied as to Clark.

Leave to amend shall be given freely when justice so requires. Fed. R. Civ. P. 15(a). However, a district court may deny a motion to amend if it is clear that such an amendment would be futile because it would be dismissed on summary judgment. Gabrielson v. Montgomery Ward & Co., 785 F.2d 762, 766 (9th Cir. 1986). The Plaintiff has provided no proof or analysis that its proposed amended claim against Clark's contractor's bond would survive the inevitable summary judgment motion that Defendants would bring against it. San Diego has provided no allegation that it filed the requisite pre-claim notice, nor alleged any

---

[4] The pre-claim notice against a contractor's bond must be given within 10 days of the first delivery of supplies while the pre-claim notice against a retained percentage applies to all supplies delivered in the sixty days before the notice. Wash. Rev. Code §§ 39.08.065, 60.28.015.

ORDER  11–

additional valid labor claims. The Plaintiff instead argues that under the liberal amendment policy of Fed. R. Civ. P. 15(a), the Court should allow its amendment and Defendants can raise their arguments in a motion for summary judgment. As Defendants arguments in a motion for summary judgment would undoubtedly be identical to EII's prevailing arguments on the motion for partial summary judgment the Court considers in this Order, the Court DENIES the Plaintiff's Motion to Amend, docket no. 31, as futile.

## CONCLUSION

The Plaintiff's claim against the retained percentage for payment of its materials claim fails as the Plaintiff did not provide the required pre-claim notice. Any labor claim it may have against Clark or the Port has been satisfied by the payments it has received thus far. However, there are material issues of fact which preclude the grant of summary judgment on the issue of damages. Therefore, the Court GRANTS Defendant EII's motion for partial summary judgment, docket no. 14, as to Plaintiff's claims against the retained percentage and dismisses Plaintiff's claims against Clark, the Port, and the retained percentage with prejudice. The Court DENIES Defendant EII's motion for partial summary judgment, docket no. 14, with regard to the Plaintiff's damages claims.

The Plaintiff has failed to demonstrate why its proposed amendment to its complaint would withstand the Defendants' inevitable motion for summary judgment. Therefore, the Court DENIES the Plaintiff's motion to amend, docket no. 31, as futile.

IT IS SO ORDERED.

DATED this 26th day of April, 2005.

Thomas S. Zilly
United States District Judge

ORDER  12–